IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Justin Noble, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>Hall's Southern Kitchens, LLC d/b/a Hall's Chop House,<br><br>　　　　　　　　　Defendants. | Civil Action No.:  2:20-cv-1792-RMG<br><br>**FLSA<br>COLLECTIVE ACTION**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Justin Noble, individually and on behalf of all other similarly situated individuals, by way of Complaint, would allege and respectfully show unto this Honorable Court the following:

### I. Nature of Claims

1.　　This action is brought individually and as a collective action for unpaid minimum wage and overtime compensation, for liquidated damages, and for other relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. ("FLSA"). The collective action provisions under the FLSA provide for opt-in class participation.

### II.  Parties, Jurisdiction, and Venue

2.　　Plaintiff is a citizen and resident of Charleston County, South Carolina.

3.　　Defendant Hall's Southern Kitchens, LLC d/b/a Hall's Chop House ("Defendant") is a limited liability corporation organized and existing under the laws of the State of South Carolina and having its principal place of business in Charleston County, South Carolina.

4.　　This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this action is based, in part on the FLSA.

5.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because

2

Defendant's conducts a substantial part of its business in the Charleston judicial division, and the unlawful employment practices giving rise to Plaintiff's claims, and the claims of the putative collective opt-in Plaintiffs, were committed within the Charleston judicial division.

### III.  Collective Action Allegations

6.     Plaintiff brings all claims asserted herein, individually and as an opt-in, collective action pursuant to 29 U.S.C. § 216(b), on behalf of two classes of individuals employed by Defendant at the restaurant Hall's Chop House in Charleston, SC at any time within three (3) years prior to joining this lawsuit, who were nonexempt tipped employees who did not sign an arbitration agreement.  Plaintiff is a member of both classes.

A.     Class I:  Male employees in the positions of servers, server assistants, and food runners who were required by Defendant to have their work shirts laundered by an outside service and Defendant deducted the cost of the aundering from their tips or wages; and

B.     Class II:  employees in the position of servers who Defendant either knew, or should have known, worked off the clock to avoid being paid overtime or whou were not paid the correct rate for all hours worked over forty hours in a workweek.

These two classes are jointly the "FLSA Collective Members."

7.     At all times relevant hereto, Plaintiff and the FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendant's employment practices, policies, plans, and common programs, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff and others similarly situated at the legally-required minimum wage for all hours worked and one-and-one-half times this rate for work in excess of forty hours per workweek.  Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

3

8. That, Defendant required tipped male servers, server assistants, and food runners to remit some of their wages and tips they received for the costs of laundering the uniforms that Defendant required male employees to wear each pay period.

9. Defendant is aware or should have been aware that federal law prohibited it from withholding payments from male servers, server asssistants and food runners to reimburse Defendant for its labor and operational costs, including the costs of laundering of the male employees' required work uniforms.

10. Defendant is aware or should have been aware that federal law required it to pay employees minimum wage for all the hours they work.

11. Defendant is aware or should have been aware that federal law required it to pay non-exempt employees an overtime premium for hours worked in excess of forty (40) per workweek.

12. Defendant's unlawful conduct has been widespread, repeated, and consistent.

13. The First and Second Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to § 216(b).

## V.  Factual Allegations

14. The allegations of the preceding paragraphs are realleged herein verbatim.

15. Plaintiff was an employee of Defendant from January 2016 until November 15, 2019.  Plaintiff was initially hired as a server assistant and was promoted to the position of server in April 2016.  At all times relevant hereto he was a non-exempt employee.

16. Upon information and belief, there are a significant number of other current and former employees of Defendant, similarly-situated to Plaintiff, who were improperly paid for overtime work and/or not paid for overtime work, who had withholdings from their wages and tips

4

for Defendant's labor and operational costs, including the costs of laundering the male employees' required work uniforms.

17. Specificaly, Defendant maintained a policy and practice whereby Plaintiff and other similarly situated male employees were required to wear work uniforms. In this regard, Defendant maintained a dress code policy that required male servers, server assistants and food runners' uniforms to be "clean" and "wrinkle free" by having them professionally cleaned on a regular basis.

18. Defendant required Plaintiff and other similarly situated male employees to pay for the cleaning and maintenance of their uniforms. Plaintiff and others similarly situated were subjected to improper deductions each pay period for the costs of professional laundering of their work uniforms; specifically, they were subjected to improper deductions in the amount of $10.00 per pay bi-weekly pay period.

19. The same practice of withholding for operational costs was raised in a lawsuit filed against a related company, High Cotton, filed in September 2018 ("the High Cotton lawsuit"). On or about October 19, 2018, Defendant ceased the improper uniform cleaning deduction from Plaintiff's compensation and that of other servers, server assistants and food runners, but Defendant did not make Plaintiff or others similarly situated whole by reimbursing them the money unlawfully withheld from their pay for over two years.

20. As a result of Defendant's mandatory uniform deduction policy, Defendant violated the rights of Plaintiff and numerous similarly-situated employees and failed to pay these employees the federally-mandated minimum wage for all hours worked.

21. Additionally, Plaintiff and other similarly-situated sometimes worked over forty (40) hours in a workweek without receiving proper overtime compensation at the rate of at least

one and one half times the federally-mandated minimum wage.

22. Specifically, as a result of Defendant's complaints about paying overtime, Plaintiff and others similarly-situated routinely worked off the clock by clocking in late and clocking out early, or not clocking in at all and sharing log-in inforation with a fellow worker, during a shift when they knew their hours would exceed 40 in a workweek.

23. Defendant knew or should have known Plaintiff and others similarly situated routinely worked off the clock because Defendant vigorously discouraged employees from working overtime and would turn away employees or cut their shifts short if they worked overtime.

24. In 2018 and 2019, Plaintiff and all nonexempt employees worked off the clock because Defendant locked them out of the timeclock after an alleged issue with the clock-in practices of the kitchen staff. During that time, employees had to wait for a manager to clock them in, which sometimes took hours. Meanwhile, the employees were performing their job duties off the clock.

## FOR A FIRST CAUSE OF ACTION
### (Fair Labor Standards Act – Withholding Workers' Pay for Operational Costs)
### (Individual and Collective Action)

25. The allegations of the preceding paragraphs are realleged herein verbatim.

26. Plaintiff and the members of the Plaintiff class were employees of Defendant's for purposes of the Fair Labor Standards Act during all times relevant to this Complaint, working at Hall's Chop House in Charleston, South Carolina.

27. At all times relevant hereto, Defendant's annual gross volume of sales made or business done was not less than $500,000. Alternatively, Plaintiff, and all other similarly-situated employees, worked in interstate commerce so as to fall within the protection of the FLSA.

6

28. If an employer requires tipped employees to wear, launder, or professionally clean a uniform, the cost of professional cleaning that uniform should be paid by the employer pursuant to 29 C.F.R. § 531.3 and not by the employee, particularly if the expenses reduce the employee's earnings below the minimum wage-regardless of whether the employee consents to the deduction or not.

31. When the employer makes deductions from the tips or wages of tipped workers or required tipped workers to use their wages or tips to pay for business expenses or operational costs that are primarily for the benefit of the employer, such as having work uniforms professionally cleaned and maintained on a regular basis, the employer is not allowed to claim a tip credit.

32. Without the benefit of the tip credit, the employer must pay tipped workers an hourly rate of the statutory minimum wage of $7.25 per hour for all hours worked, without any credit for the tips they received.

33. At all times relevant hereto, Defendant compensated Plaintiff and others similarly situated at the tipped minimum wage rate rather than at the full hourly minimum wage rate as required by 29 U.S.C. § 201, *et. seq.*

34. That until October 2018, Defendant required male servers, server assistants and food runners to wear uniforms that were "clean" and "wrinkle free" and required their shirts to be professionally cleaned on a regular basis.

35. Defendant required Plaintiff and other tipped workers to pay for the cleaning and maintenance of their uniforms. Plaintiff and others similarly situated were subjected to improper deductions each pay period for the costs of professional laundering of their work uniforms. Specifically, male servers, server assistants and food runners were subjected to improper

7

deductions in the amount of $10.00 per pay bi-weekly pay period

36. Defendant knew such a practice was illegal by virtue of the High Cotton lawsuit, but Defendant took no action make the affected employees whole by reimbursing them the money unlawfully withheld from their pay for over two years.

37. Defendant has violated the FLSA, 29 U.S.C. § 203(m), in reckless disregard for the rights of Plaintiff and others similarly situated.

38. The work and pay records of Plaintiff and the members of the Plaintiff class are in the possession, custody, and/or control of Defendant or an entity created and/or controlled by Defendant, and Defendant is under a duty pursuant to section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to the regulations of the United States Department of Labor to make, keep, and preserve such payroll and other employment records from which the amount of Defendant liability can be ascertained. Plaintiff requests an order of this Court specifically requiring Defendant to preserve such records during the pendency of this action.

39. As a result of Defendant's willful violations of the FLSA, Plaintiff and others similarly-situated have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 201, *et. seq.*

**FORA SECOND CAUSE OF ACTION**
**(Fair Labor Standards Act-Overtime Wages)**
**(Individual and Collective Action)**

37. The allegations of the preceding paragraphs are realleged herein verbatim.

38. The overtime wage provisions set forth in the FLSA, 29 U.S.C. § 201, *et. seq.*, and the supporting federal regulations apply to Defendant and protect Plaintiff and others similarly

8

situated.

39. Plaintiff and the FLSA Collective Members worked in excess of forty (40) hours during some workweeks in the relevant period.

40. Specifically, as a result of Defendant's complaints about paying overtime, Plaintiff and others similarly situated routinely worked off the clock by clocking in late and clocking out early during a shift when they knew their hours would exceed 40 in a workweek

40. In other instances, particularly in 2018 and 2019, Defendant interfered with Plaintiff and others' ability to clock in by locking employees out of the timeclock after an alleged issue with the clock-in practices of the kitchen staff.  During that time, employees had to wait for a manager to clock them in, which sometimes took hours.  Meanwhile, the employees were performing their job duties off the clock.

41. Defendant was aware, or should have known, that due to the vigorous manner in which it opposed employees working overtime and due to its limiting employees' access to time clocks, many employees worked off the clock.

42. Defendant willfully failed to pay Plaintiff and the FLSA Collective Members minimum wage ($7.25 per hour) and overtime wages of one-and-one-half times the full minimum wage ($10.88 per hour) for all hours worked in excess of forty (40) hours per work week.

43. As a result of Defendant's willful violations of the FLSA, Plaintiff and others similarly-situated have suffered damages by being denied minimum wages and overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §201, *et. seq*

44. Defendant's unlawful conduct, as described herein, has been willful and

9

intentional. Defendant was aware or should have been aware that the practices described herein were unlawful.

45. Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §201, *et. seq.*

WHEREFORE, having fully set forth their allegations against Defendant, Plaintiff respectfully requests that the Court enter judgment for the following relief:

a. An order authorizing the sending of appropriate notice to current and former employees of Defendants who are potential members of the collective action under the Fair Labor Standards Act, in both Classes, via electronic mail and text message;

b. A declaratory judgment that Defendant has willfully and in bad faith violated the overtime compensation provisions of the FLSA, and have deprived Plaintiff and the members of the Plaintiff class of their rights to such compensation;

c. An order requiring Defendant to provide a complete and accurate accounting of all the overtime compensation and other compensation to which Plaintiff and the members of the Plaintiff class are entitled;

d. An award of monetary damages to Plaintiff and the members of the Plaintiff class in the form of back pay for straight time and overtime compensation and other compensation due, together with liquidated damages in an equal amount;

e. Injunctive relief ordering Defendant, at all locations owned, managed and/or otherwise controlled by Defendant, to amend its wage and hour policies to comply with applicable laws;

f. Pre-judgment interest;

g. Attorneys' fees and costs; and,

10

    h.  Such further relief as the Court deems just and proper.

Plaintiffs request a trial by jury.

                                  s/Bruce E. Miller
                                  Bruce E. Miller, Esq. (Fed Bar No. 3393)
                                  BRUCE E. MILLER, P.A.
                                  147 Wappoo Creek Drive, Suite 603
                                  Charleston, SC  29412
                                  T: 843.579.7373
                                  F: 843.614.6417
                                  bmiller@brucemillerlaw.com


                                  s/Amy L. Gaffney
                                  Amy L. Gaffney, Esq. (Fed Bar No. 6316)
                                  Christina Summer, Esq. (Fed. Bar No. 7698)
                                  GAFFNEY LEWIS, LLC
                                  3700 Forest Drive, Suite 400
                                  Columbia, SC  29204
                                  T: 803.790.8838
                                  F: 803.790.8841
                                  agaffney@gaffneylewis.com

                                  **ATTORNEYS FOR PLAINTIFF**

CHARLESTON, SC

May 7, 2020